Estate of Chambers v. Vision Two Hospitality Mgmt., LLC 2013 NCBC 52.

STATE OF NORTH CAROLINA

COUNTY OF IREDELL

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 2944

ESTATE OF JERRY CARL
CHAMBERS; BETTIE BUCHANAN
CHAMBERS; GEORGE COOLIDGE
CHAMBERS, JR.; JUDY WARREN
CHAMBERS; SUE CHAMBERS
CAMPBELL; and KATHY
CAMPBELL PARLIER; TRUSTEES
UNDER THE WILL OF JAMES
KENNETH CHAMBERS; NEWTON
SANKEY GAITHER, III; JUNE
NUTT GAITHER; JOHN DAVID
GAITHER; ROBERT ROSSER
CHAMBERS; SHIRLEY HAYES
CHAMBERS; MISSY CHAMBERS
KING; JOE KING; WILLIAM
FRANKLIN CHAMBERS, II;
CAROLE CHAMBERS ADAMS; and
JOHN G. ADAMS,

   Plaintiffs,

  v.

VISION TWO HOSPITALITY
MANAGEMENT, LLC, a North
Carolina Limited Liability Company;
FALGUN DHARIA; and PARU
DHARIA,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER AND OPINION

{1} THIS MATTER is before the court on Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint ("Motion") pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"). For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

*Thad A. Throneburg, Attorney at Law by Thad A. Throneburg for Plaintiffs.*
*Erwin, Bishop, Capitano & Moss, P.A. by Lex M. Erwin for Defendants.*

Gale, Judge.

## I.    PARTIES

{2}    Plaintiffs Estate of Jerry Carl Chambers, Bettie Buchanan Chambers, George Coolidge Chambers, Jr., Judy Warren Chambers, Sue Chambers Campbell, and Kathy Campbell Parlier, Trustees under the will of James Kenneth Chambers, Newton Sankey Gaither, III, June Nutt Gaither, and John David Gaither are residents of Iredell County, North Carolina. (Second Am. Compl. ¶ 1.)

{3}    Plaintiffs Robert Rosser Chambers and Shirley Hayes Chambers are residents of DeKalb County, Georgia. (Second Am. Compl. ¶ 2.)

{4}    Plaintiffs Missy Chambers King and Joe King are residents of Richland County, South Carolina. (Second Am. Compl. ¶ 3.)

{5}    Plaintiff William Franklin Chambers II is a resident of Monroe County, Georgia. (Second Am. Compl. ¶ 4.)

{6}    Plaintiffs Carole Chambers Adams and John G. Adams are residents of Fulton County, Georgia. (Second Am. Compl. ¶ 5.)

{7}    Defendants Falgun Dharia and Paru Dharia are residents of New Jersey. (Second Am. Compl. ¶¶ 6–7.)

{8}    Defendant Vision Two Hospitality Management, LLC ("Vision Two") was a limited liability company formed under the laws of the State of North Carolina with its principal place of business in Iredell County, North Carolina, but it was dissolved on September 2, 2010. (Second Am. Compl. ¶¶ 8, 12; Second Am. Compl. Ex. 2.)

## II. FACTUAL BACKGROUND

{9} The court does not make findings of fact in connection with a motion to dismiss, as a motion to dismiss "does not present the merits, but only [determines] whether the merits may be reached." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). For the purposes of the Motion the court assumes the facts alleged in the Second Amended Complaint are true and makes inferences in Plaintiffs' favor, but is not bound to legal conclusions asserted therein. The court may consider documents which are the subject matter of the action or which are specifically referred to in the complaint without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Schlieper v. Johnson*, 195 N.C. App. 257, 261, 672 S.E.2d 548, 551 (2009); *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60–61, 554 S.E.2d 840, 847 (2001).

{10} Plaintiffs leased the land and premises at issue to Vision Two to operate and manage a hotel. (Second Am. Compl. ¶¶ 13–20; Second Am. Compl. Ex. 3 (hereinafter "Lease") 1.)[1] Vision Two was required to maintain, repair, insure, and pay taxes on the premises. (Second Am. Compl. ¶ 21; Lease 2–8.) Vision Two could assign or sublet the premises, but it remained liable to Plaintiffs for failing to perform terms binding it under the Lease. (Lease 17.) The Lease permitted Plaintiffs to inspect and examine the premises during normal business hours. (Lease 11.)

{11} Plaintiffs allege as follows. The Dharias are controlling members of Vision Two who intended to siphon off as much revenue as possible without performing under the Lease. (Second Am. Compl. ¶¶ 110–12.) They sublet the premises to subtenants and charged excessive rent that prevented those subtenants from being able to perform tenant duties under the Lease. (Second Am. Compl. ¶¶ 93–95, 110–12.) Knowing that the subtenants' excessive rent would not enable them to perform, the Dharias nonetheless transferred assets from Vision Two to

---

[1] Plaintiffs' and Defendants' predecessors-in-interest were the original landlords and tenants to the Lease, which Plaintiffs and Vision Two modified on March 1, 2010.

themselves, thus intentionally undercapitalizing Vision Two. (Second Am. Compl. ¶¶ 94–95, 110–12; 116–22.) As a result, the hotel is in a state of substantial disrepair. (Second Am. Compl. ¶ 102.) Vision Two also failed to pay Plaintiffs amounts due under the Lease and misrepresented to Plaintiffs that certain repairs were made to the land and premises. (Second Am. Compl. ¶¶ 126, 136–37.) Vision Two is now insolvent, and the North Carolina Secretary of State dissolved it in 2010 for failing to file annual reports. (Second Am. Compl. ¶ 109; Second Am. Compl. Ex. 2.)

{12}  On September 12, 2012 Plaintiffs faxed a letter to Vision Two alleging that it had breached the Lease by failing to maintain, repair, or insure the premises, and Plaintiffs would terminate the Lease in thirty days if Vision Two did not cure the breach. (Second Am. Compl. ¶¶ 22–26; Second Am. Compl. Exs. 6–8.) Claiming a failure to cure, Plaintiffs, via faxed letter, notified Vision Two of their intent to terminate the Lease. (Second Am. Compl. ¶¶ 27–34; Second Am. Compl. Exs. 9–11.) On October 25, 2012 Plaintiffs terminated the Lease with Vision Two and demanded possession of the land and premises. (Second Am. Compl. ¶¶ 35–40; Second Am. Compl. Exs. 12–14.) Plaintiffs continued to send Vision Two notices of default and demands for possession of the land and premises over the next several months. (Second Am. Compl. ¶¶ 48–91; Second Am. Compl. Exs. 15–26.)

### III.  PROCEDURAL BACKGROUND

{13}  Plaintiffs initiated this lawsuit in Iredell County on October 26, 2012 by filing a Complaint in Summary Ejectment. After trial on November 26, 2012, judgment was entered in Plaintiffs' favor granting them possession of the premises in question. Defendants appealed the judgment to the District Court Division. This action was then transferred from the District Court Division to the Superior Court Division on January 14, 2013. Plaintiffs filed an Amended Complaint on February 4, 2013. The case was designated a Business Court case by Chief Justice Sarah Parker by Order dated February 11, 2013 and assigned to the undersigned on

February 13, 2013.

{14}    Defendants filed a Motion to Dismiss the Amended Complaint on March 14, 2013.  Plaintiffs filed a Second Amended Complaint on April 19, 2013, mooting the original Motion to Dismiss.  In their Second Amended Complaint, Plaintiffs allege claims for possession of the premises, fraud, fraudulent conveyance, piercing the corporate veil, unfair and deceptive trade practices, civil conspiracy, detention damages, compensatory damages, constructive trust, and attachment.

{15}    Defendants filed the present Motion on June 21, 2013, seeking to dismiss all claims except those for possession.  Defendants contend that this case is merely a landlord-tenant dispute between Plaintiffs and Vision Two.  They seek dismissal of all claims alleged against the Dharias personally.  The Motion has been fully briefed, a hearing was held, and the matter is ripe for disposition.

## IV.    ANALYSIS

{16}    The appropriate inquiry on a motion to dismiss pursuant to Rule 12(b)(6) is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)).  A motion to dismiss may be granted if the complaint reveals the absence of facts required to make out a claim for relief or if the complaint reveals some fact that necessarily defeats the claim.  *Wood v. Guilford Cnty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002).

### A.  Plaintiffs' Fraud Claim Fails under Rule 9(b)

{17}    Besides reincorporating other allegations of their Complaint, Plaintiffs specifically allege that from 2009 to 2012 Vision Two and Paru Dharia misrepresented that they had repaired the leased premises and that Plaintiffs

reasonably relied on those misrepresentations "in continuing to allow defendant Vision Two to" lease the premises. (Second Am. Compl. ¶¶ 125–28.)

{18} To state a fraud claim, a party "must allege with particularity '(1) that defendant made a false representation or concealment of a material fact; (2) that the representation or concealment was reasonably calculated to deceive . . . ; (3) that defendant intended to deceive . . . ; (4) that [the party] was deceived; and (5) . . . damage resulting from defendant's misrepresentations or concealment." *BDM Invs. v. Lenhil, Inc.*, 2012 NCBC LEXIS 7, at *56–*57 (N.C. Super. Ct. Jan. 18, 2012) (citing *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 610, 486 S.E.2d 443, 447 (1997)). In order to satisfy the heightened pleading requirements of Rule 9(b), fraud claims must "allege the 'time, place, and content of the fraudulent'" acts or representations, identify "'the person making the representations[,] and [describe] what was obtained as a result of the fraudulent acts or representations.'" *Id.* at *58 (citing *Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 39, 626 S.E.2d 315, 321 (2006)).

{19} Reliance on "allegedly false representations must be reasonable." *Forbis v. Neal*, 361 N.C. 519, 527, 649 S.E.2d 382, 387 (2007). When the party relying on the allegedly fraudulent or misleading statement could have discovered the truth, pleading reasonable reliance requires the party to allege either denial of the opportunity to investigate or that a reasonably diligent inquiry would not have revealed the truth. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 59, 554 S.E.2d 840, 846–47 (2001) (citing *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999)). In *Oberlin Capital, L.P.*, the contract governing the allegedly fraudulent transaction noted that plaintiffs had an opportunity to inspect the premises and interview individuals involved in the transaction. *Id.* at 60; 554 S.E.2d at 847. The plaintiffs' failure to allege either that defendants denied them the opportunity to investigate or that a reasonably diligent inquiry would not have revealed the truth warranted a Rule 12(b)(6) dismissal of their fraud claim for failing to plead reasonable reliance. *Id.*

{20}    Article XI of the Lease permits Plaintiffs, at *any* time during the lease term, to inspect and examine the "premises during reasonable business hours[.]" (Lease 11).  Plaintiffs do not allege that Defendants prevented them from exercising these inspection rights, nor do they allege that a reasonably diligent inspection would not have revealed the true condition of the leased premises.  Thus, Plaintiffs have not satisfied Rule 9(b)'s heightened pleading requirements for reasonable reliance.

{21}    The court also concludes that the general allegations of the Complaint and the specific allegation supporting the fraud count—that from 2009 to 2012 Vision Two and Paru Dharia misrepresented that they had repaired the premises— fail to allege sufficiently the time, place, and manner of the allegedly fraudulent acts as required by Rule 9(b) and the above-cited cases and further fail to demonstrate reasonable reliance on the allegedly fraudulent statements.  The fraud claim is DISMISSED.

### B.   Plaintiffs Do Not State an Actionable Civil Conspiracy Claim

{22}    A conspiracy claim "must allege 'a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury." *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 608, 659 S.E.2d 442, 449 (2008) (citing *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 416, 537 S.E.2d 248, 265 (2000)).  Importantly, plaintiffs must allege facts sufficient to show "*that a conspiracy in fact existed.*"  *Id.* at 609; 659 S.E.2d at 449 (emphasis in original). Circumstantial evidence may establish an agreement, but mere "suspicion or conjecture" does not warrant "submission to a jury."  *Id.*; *see also Dickens v. Puryear*, 302 N.C. 437, 456–57, 276 S.E.2d 325, 337 (1981).  At the pleading stage, this means allegations that "defendants maliciously conspired together and acted in concert, explicitly, impliedly or tacitly, to engage in the above-referenced fraudulent and otherwise wrongful acts[,]" without additional supporting facts, are insufficient

to survive a Rule 12(b)(6) motion. *S.N.R. Mgmt. Corp.*, 189 N.C. App. at 609, 659 S.E.2d at 449.

{23} Like the allegations supporting the fraud claim dismissed in the *S.N.R. Management Corp.* case, Plaintiffs' allegations here vaguely accuse "defendant Vision Two, defendants Dharia, other members and managers of defendant Vision Two and other persons unknown to the plaintiffs including multiple entities including the name 'Mantiff' and 'Vision'" of concocting "a multi-state and multi-entity conspiracy under which they would, among other things and variously, directly and through their alter egos" commit wrongful acts against Plaintiffs. (Second Am. Compl. ¶ 93.) This allegation does not satisfy Plaintiffs' burden to plead allegations sufficient to show any agreement or conspiracy. Plaintiffs' civil conspiracy claim is DISMISSED.

## C. Plaintiffs State an Actionable Veil Piercing Claim

{24} Under the "instrumentality rule," veil piercing claims must allege control of the corporate entity by another individual or entity that was used to commit fraud or other wrongdoing against the plaintiff that proximately caused plaintiff's injury. *See, e.g., Fischer Inv. Capital, Inc. v. Catawba Dev. Corp.*, 200 N.C. App. 644, 649–50, 689 S.E.2d 143, 147 (2009). Control may be shown by inadequate capitalization, failing to follow corporate formalities, complete domination of the corporation by another, or excessive fragmentation of a single enterprise into separate corporate entities. *Id.* at 650–51; 689 S.E.2d at 147–48 (citing *East Mkt. St. Square, Inc. v. Tycorp Pizza IV, Inc.*, 175 N.C. App. 628, 636, 625 S.E.2d 191, 198 (2006)). No one factor is determinative. *Id.* Plaintiffs must allege some combination of factors such that the entity "had 'no separate mind, will or existence of its own' and . . . was the 'mere instrumentality or tool' of the dominant corporation." *Id.* Mere recitations of the elements of a veil piercing claim and the factors alleged to show control, without supporting factual allegations, are "bare legal conclusions" not entitled to any deference in considering a motion to

dismiss a veil piercing claim. *Blue Ridge Pediatric & Adolescent Med., Inc. v. First Colony Healthcare, LLC*, 2012 NCBC LEXIS 52, at \*15 (N.C. Super. Ct. Oct. 3, 2012).

{25}   Plaintiffs' claim to pierce Vision Two's corporate veil arises primarily from allegations that the Dharias, members of Vision Two, dominated and controlled its activities in a manner that prevented it from upholding its obligations under the Lease. More specifically, Plaintiffs contend that the Dharias intentionally undercapitalized Vision Two by draining its assets instead of performing under the lease, ultimately resulting in its insolvency. Instead of upholding its lease obligations and properly maintaining the hotel, Vision Two let the hotel fall into substantial disrepair. Although Defendants deny the allegations, they state a veil piercing claim. Defendants' Motion is DENIED as to that claim.

### D. Plaintiffs State a Fraudulent Conveyance Claim

{26}   Plaintiffs allege that Vision Two's distributions to the Dharias were fraudulent transfers under North Carolina's Uniform Fraudulent Transfer Act ("UFTA"). Plaintiffs allege that their contractual relationship with Vision Two creates a creditor-debtor relationship that gives them standing under the UFTA to challenge Vision Two's transfers, (Second Am. Compl. ¶¶ 116–17,) and that Defendants "have had actual knowledge" of Plaintiffs' contract claims since April 2009, (Second Am. Compl. ¶ 118.) Plaintiffs allege that Vision Two transferred assets with intent to hinder, delay, or defraud Plaintiffs. (Second Am. Compl. ¶ 119.) They also allege that Vision Two transferred assets without receiving reasonably equivalent value in return from the Dharias, and that such transfers left Vision Two with an unreasonably small amount of assets in relation to its business (managing and maintaining the leased premises) or that Vision Two was insolvent when it made the transfers (Second Am. Compl. ¶¶ 116–22.) Plaintiffs also allege that the Dharias, as insiders of Vision Two, received transfers to satisfy debts owed

to them by Vision Two when they had reason to believe that Vision Two was insolvent. (Second Am. Compl. ¶ 116.)

{27} Defendants contend Plaintiffs have no standing to sue because they are not "creditors" possessing "claims" under the UFTA. Defendants further assert that Plaintiffs have insufficiently pleaded UFTA claims, and that Plaintiffs' claims are barred by either the UFTA's statute of limitations or the LLC Act's statute of limitations on wrongful distributions to LLC members. *See* N.C. Gen. Stat. §§ 39-23.9; 57C-4-07(c).

{28} The court first considers Plaintiffs' standing to sue under the UFTA. Plaintiffs must be creditors of Vision Two or the Dharias in order to proceed under the UFTA. *See Maloney v. Alliance Dev. Group, LLC*, 2006 NCBC LEXIS 14, at *14–*15 (N.C. Super. Ct. Sept. 18, 2006) (citing N.C. Gen. Stat. §§ 39-23.4(a), 39-23.5(a), 39-23.7(a)). One must have a "claim," defined as a "right to payment," to be a creditor under the UFTA. N.C. Gen. Stat. § 39-23.1(3)–(4); *see also id.* A "right to payment" can be unliquidated, contingent, unmatured, or disputed, and need not be reduced to a judgment. N.C. Gen. Stat. § 39-23.1(3). The wrong causing an injury that creates an enforceable obligation generates a right to payment under the UFTA. *See In re Rountree*, 448 B.R. 389, 405–06 (Bankr. E.D. Va. 2011) (applying North Carolina's UFTA).

{29} Plaintiffs' allegations that Vision Two failed to perform under the lease are "claims" creating a creditor-debtor relationship under the UFTA. Plaintiffs therefore have standing to pursue their UFTA claims.

{30} Plaintiffs have sufficiently pleaded UFTA claims, as well. Given the UFTA's broad definitions of debtor, creditor, claim, insider, and transfer, the court concludes that the Second Amended Complaint states claims under UFTA sections 39-23.4(a) and 39-23.5 adequate to withstand a Rule 12(b)(6) motion. N.C. Gen. Stat. § 39-23.1; *see also Fischer Inv. Capital, Inc. v. Catawba Dev. Corp.*, 200 N.C. App. 644, 658–63, 689 S.E.2d 143, 152–55 (2009).

{31} The court acknowledges tension between the UFTA and the LLC Act's limitations on member liability and restriction of distributions and will remain

sensitive to that tension as this case proceeds.  *See* Russell M. Robinson II, *Robinson on North Carolina Corporation Law* § 11.03, at 11-4–11-5 (7th ed. 2013). It does not wish to and does not here encourage the pleading of claims under the UFTA to override limited corporate liability in the absence of clearly alleged egregious facts.  Based upon the unique allegations of this particular case, and accepting the allegations as true as it is required to do, the court ultimately concludes that, at the pleading stage, the UFTA claims survive Rule 12(b)(6).

{32}    Finally, the court cannot determine, based solely on allegations in the Second Amended Complaint, whether the statutes of limitations cited above bar all claims challenging Vision Two's allegedly fraudulent transfers.  This issue should be revisited at summary judgment.

{33}    Defendants' Motion is DENIED as to the UFTA claims.

E.  Plaintiffs State an Actionable Unfair & Deceptive Trade Practices Claim

{34}    An unfair and deceptive trade practices claim requires showing an unfair or deceptive act or practice, in or affecting commerce, that proximately caused plaintiff's injury.  N.C. Gen. Stat. § 75-1.1(a); *Bumpers v. Community Bank of Northern Virginia*, __ N.C. __, 747 S.E.2d 220, 226 (2013) (citing *Dalton v. Camp*, 353 N.C. 647, 646, 548 S.E.2d 704, 711 (2001)).  Acts or practices that violate public policy or are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers" are unfair.  *Bumpers*, __ N.C. at __, 747 S.E.2d at 228 (citing *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007)).  Breaches of contract support unfair or deceptive trade practice claims only when accompanied with "substantial aggravating circumstances." *Southeastern Shelter Corp. v. Btu, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002) (citing *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 62, 418 S.E.2d 694, 700 (1992)).

{35}    The court concludes that, based on the factual allegations discussed above, Plaintiffs do not seek to cast a mere contract claim as a Chapter 75 claim but

allege other acts that, if proven, sustain a claim for unfair and deceptive trade practices under section 75-1.1.

### F.  Plaintiffs May Seek Detention & Compensatory Damages

{36}    Defendants also seek dismissal of Plaintiffs' claims for compensatory and detention damages alleged against the Dharias.  The court concludes that Plaintiffs may seek damages against the Dharias for breach of contract or possession through Plaintiffs' veil piercing and UFTA claims.  The Motion is DENIED as to these claims.

### G.  Plaintiffs May Not Seek a Constructive Trust

{37}    Plaintiffs seek imposition of a constructive trust on "all property of defendant Vision Two owed, diverted, secreted, received and converted by the defendants and other Conspirators" as a "result of the defendant's [sic] actions in furtherance of the Conspiracy[.]"  The court has dismissed the conspiracy claim. Further, the court concludes that any of Defendants' assets upon which it could impose a constructive trust are recoverable through Plaintiffs' UFTA and veil piercing claims.  Constructive trust is an improper remedy for claims redressed through an adequate legal remedy.  *In re Gertzman*, 115 N.C. App. 634, 640–41, 446 S.E.2d 130, 135 (1994) (constructive trust improper remedy where creditor-debtor relationship gives adequate remedy at law); *Branch Banking & Trust Co. v. Lighthouse Fin. Corp.*, 2005 NCBC LEXIS 4, at *27–*28 (N.C. Super. Ct. Jul. 13, 2005) (dismissing constructive trust claim under Rule 12(b)(6) where remedies at law exist for claims underlying constructive trust claim).  The constructive trust claim is DISMISSED.

H.  Plaintiffs Have Not Shown Adequate Grounds for Prejudgment Attachment

{38}    Plaintiffs seek prejudgment attachment of unspecified property of the Dharias to satisfy any judgment received in this case.[2]  *See* N.C. Gen. Stat. §§ 1-440.2; 1-440.3.  A party must demonstrate entitlement to an attachment through an affidavit or verified complaint.  N.C. Gen. Stat. § 1-440.11.  An affidavit that fails "to set forth supporting facts and circumstances in a definite and distinct manner" cannot support prejudgment attachment.  *Connolly v. Sharpe*, 49 N.C. App. 152, 154, 270 S.E.2d 564, 566–67 (1980) (reversing trial court's failure to dismiss prejudgment attachment); *see also Nelson v. Hayes*, 116 N.C. App. 632, 637, 448 S.E.2d 848, 851 (1994) (affirming dissolution of prejudgment attachment order unsupported by specific factual allegations); *RDLG, LLC v. RPM Group, LLC*, No. 1:10cv204, 2011 U.S. Dist. LEXIS 56816, at *4–*5 (W.D.N.C. May 26, 2011) (denying attachment where affidavit does not describe with particularity property to be attached).  A supporting affidavit must "give the sources of information and recite positive facts reasonably supporting" the grounds for an attachment.  *Connolly*, 49 N.C. App. at 155, 270 S.E.2d at 567.

{39}    Plaintiffs seek a prejudgment attachment of $1,500,000 of unspecified assets or property of the Dharias, yet only declare that Vision Two "transferred assets to Defendants Dharia while it was insolvent with the intent defraud [sic] the Plaintiffs."  (Aff. In Attach. Proceeding.)  This allegation does not contain any facts reasonably supporting an attachment, nor does it specify which assets or property to attach. Even if the court could consider Plaintiffs' unsworn statements at the hearing and in their brief, the court concludes that Plaintiffs do not describe with sufficient particularity any conduct indicating intent to defraud that would merit

---

[2] At the hearing on August 12, 2013 and in their brief opposing the Motion, Plaintiffs contend that the court should attach any personal property, trade fixtures, or other property of Vision Two or the Dharias remaining in the hotel.  Plaintiffs also seek attachment of the accounts receivable or rent money Vision Two receives from its sublessee.  Defendants have indicated that no property has been or will be removed from the hotel during the pendency of this litigation.

imposing the extraordinary remedy of prejudgment attachment. Plaintiffs' request for prejudgment attachment is DISMISSED.

## V.  CONCLUSION

{40}  For the foregoing reasons, Defendants' Motion is GRANTED as to Plaintiffs' claims for fraud, civil conspiracy, constructive trust, and attachment, but is DENIED as to all other claims.

IT IS SO ORDERED, this the 21st day of November, 2013.